# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL DOCKET NO. 5:07CV65-V

| | |
|---|---|
| NICHOLAS CRESPO, )<br>      **Plaintiff,** )<br>)<br>v. )<br>)<br>DELTA APPAREL, INC., )<br>      **Defendant.** )<br>_____) | **Memorandum and Order** |

**THIS MATTER** is before the Court on Defendant's Motion To Dismiss Plaintiff's First and Second Causes of Action (Documents #3, #4); Plaintiff's Motion To Remand pursuant to 28 U.S.C. §1447(c) (Documents #8, #9, #14); Defendant's Motion To Strike Plaintiff's Amended Complaint (Document #6); and Defendant's Alternative Motion To Dismiss Plaintiffs' Amended Complaint (Documents #10, #11).

## I. Procedural History

On May 17, 2007, Plaintiff Nicholas Crespo ("Crespo") filed a civil action in Superior Court, Catawba County, North Carolina, alleging the following against Defendant Delta Apparel, Inc. ("Delta Apparel"): 1) wrongful discharge in violation of North Carolina's public policy, namely, violation of the Occupational Safety and Health Act of North Carolina ("OSHANC"), N.C. Gen. Stat. 95-126 *et seq.* (First Cause of Action); 2) violation of the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. 95-25.1 *et seq.* (Second Cause of Action); and 3) breach of contract (Third Cause of Action). (State Case No. 07-CvS-1777) Plaintiff's initial complaint sought monetary damages "in excess of $10,000.00, but less than $75,000.00, and damages for back wages, lost wages, and punitive damages. . . ." (Compl. Prayer for Relief ¶a) More specifically, Plaintiff's request for relief is based upon his claims for "wages, back pay, future lost income, and benefits" and

"unpaid wages, plus interest at the legal rate, plus costs and fees, including reasonable attorney's fees." (Compl. ¶27, ¶32)

On June 20, 2007, Delta Apparel filed a Notice of Removal asserting that removal to federal court was proper as a result of the diversity jurisdiction statute, 28 U.S.C. §1332. (Document #1) Also on June 20, 2007, Defendant filed its Answer and a Motion To Dismiss Plaintiff's First and Second Causes of Action. (Documents ##2, 3, 4)

Without seeking leave of Court, Plaintiff responded to Defendant's motion by submitting an Amended Complaint on June 29, 2007.[1] (Document #5) Plaintiff's Amended Complaint does not include any reference to punitive damages and similarly omits the previous request for recovery of employment benefits. Likewise, Plaintiff's Amended Prayer For Relief deletes the "and" between the monetary sum sought and the categories of damages. (Am. Compl. Prayer for Relief ¶a) The new prayer seeks to recover damages "for breach of contract, or alternatively, for wrongful discharge in violation of public policy, for back wages and lost future wages in an amount in excess of $10,000.00 but less than $75,000.00. . . ." (Am. Compl. Prayer for Relief ¶a) The Amended Complaint specifies that Plaintiff's claim under the Wage and Hour Act seeks recovery in an amount less than $2,000.00. (Am. Compl. Prayer for Relief ¶b) Plaintiff then expressly limits his prayer for relief to "an amount less than $75,000.00." (Am. Compl. Prayer for Relief ¶c)

On July 2, 2007, Defendant moved to strike Plaintiff's Amended Complaint. (Document #6) Defendant also filed another motion to dismiss in an abundance of caution. (Document #10, #11)

---

[1] Rule 15(a) of the Federal Rules of Civil Procedure provides, generally, that after a responsive pleading has been served, or is otherwise not permitted, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a) (2007).

On July 20, 2007, Plaintiff Crespo filed the instant motion for remand, which is ripe for disposition.[2] (Document #8)

## II. Motion For Remand

Plaintiff alleges that his monetary damages will not exceed the requisite amount in controversy for purposes of diversity jurisdiction. Therefore, Plaintiff seeks remand to the Superior Court of Catawba County, North Carolina.

Title 28, United States Code, Section 1441(a) provides for removal of a civil action from state court to federal court if the case could originally have been brought there. Because Defendant Delta Apparel is the party seeking removal, Delta Apparel has the burden of establishing jurisdiction is proper in this forum. *Mulcahey v. Columbia Organic Chemical Co., Inc.,* 29 F.3d 148, 151 (4th Cir.1994). While the Fourth Circuit has not expressly so ruled, the trend for federal courts within this circuit is to require a defendant to demonstrate, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold. *Dash v. FirstPlus Home Loan Owner Trust 1996-2,* 248 F.Supp.2d 489, 497 (M.D.N.C.2003); *Gwyn v. Wal-mart Stores, Inc.,* 955 F.Supp. 44, 46 (M.D.N.C.1997)(string cite omitted).[3] In evaluating whether Defendant has satisfied its burden, it is proper to resolve all doubts in favor of state court jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-09 (1941) (removal statute should be strictly construed against removal); *Hartley v. CSX Transp.*, 187 F.3d 422, 425 (4th Cir.1999); *Mulcahey,* 29 F.3d at 51.

---

[2] On October 30, 2007, the magistrate judge stayed discovery and determination of other pretrial deadlines pending ruling on the above motions. (Document #16)

[3] The preponderance of the evidence standard has generally been recognized as a more balanced approach in weighing the defendant's interest in having access to federal courts as against the plaintiff's interest in being the master of forum selection.

"Unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 288 (1938).[4] This doctrine is more commonly known as the "well-pleaded-complaint" rule. *Holmes Group, Inc. v. Vornado Air Circulation Syss. Inc.*, 535 U.S. 826, 830 (2002).

Defendant contends that jurisdiction over this action is proper under 28 U.S.C. §1332(a).[5] Pursuant to 28 U.S.C. §1332(a), diversity jurisdiction is appropriate when the amount in controversy, exclusive of interest and costs, exceeds $75,000. "The amount in controversy is determined by considering the judgment that would be entered if the plaintiff prevailed on the merits of his case *as it stands at the time of removal*." *McCoy,* 147 F.Supp.2d at 489 (emphasis added); *St. Paul Mercury*, 303 U.S. at 291-92 (for purposes of the amount in controversy inquiry, the Court must look to the status of the case at the time of removal); *See also Esancy v. Crestmark Bank*, 2007 WL 1672936 (W.D.N.C. June 8, 2007) *2 ("[T]he status of the case as disclosed by the plaintiff's complaint is controlling in the case of a removal . . .") If the amount of damages a plaintiff seeks is unclear, the Court "may look to the entire record before it and make an independent evaluation as to whether or not the jurisdictional amount is in issue." *Dash*, 248 F. Supp.2d at 498 (citing 14A Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 3725 at 423-424 (1985)); *Gwyn*, 955 F.Supp. at 46.

Applying the well-pleaded-complaint rule to the facts as they stood at the time of removal, Plaintiff's *potential* for recovery exceeds $75,000.00. Plaintiff's potential for recovery is outlined

---

[4] Some courts require a binding stipulation on the record or some other means of limiting plaintiff's recovery to the amount claimed in the Complaint. *See generally,* Wright & Miller, *Federal Practice & Procedure,* Juris.3d §3725.

[5] The complete diversity of citizenship is not in dispute.

within a "demand letter" sent to Defendant prior to commencement of the lawsuit. (Attachment B / April 2, 2007 Letter from Attorney William E. Morgan to Delta Apparel) (offering to settle for $50,000.00 but outlining relief sought as based upon estimate that it will take Plaintiff at least three years to reach the same level income he had at Delta Apparel, and expressly including punitive damages, lost benefits, etc.). Defendants' exhibits confirm that Plaintiff's potential earning capacity during the relevant time period could result in a monetary award greater than $75,000.00. (Def.'s Mem. In Opp'n at 7-10; Rudisill Aff. ¶¶ 2-5)

As originally pled by Plaintiff, there is also potential for a punitive damages award.[6] "If punitive damages are permitted under the controlling law, the demand for such damages may be included in determining whether the jurisdictional amount is satisfied." *See Turner v. CTS Con-Way Trans. Servs.*, 1999 WL 1939243, *2 (M.D.N.C. April 28, 1999) (unpublished) (citing, inter alia, *Griffin v. Holmes*, 843 F.Supp.81, 85 (E.D.N.C. 1993)). While any punitive damages estimate the Court might suggest would be merely speculative, the possibility of a punitive damages award, without more, bolsters Defendant's argument that the amount in controversy exceeds $75,000.00. *See Griffin*, 843 F.Supp. at 85.

Plaintiff, however, contends that Defendant's interpretation of his Prayer for Relief is erroneous. Plaintiff suggests that his use of the word "and" in his original complaint was merely a means of "naming the sources of that judgment" instead of "adding to the final judgment sought." (*See* Pl.'s Mem. In Supp. at 3.) Plaintiff's explanation, although reasonable, is not determinative

---

[6] Ordinarily, Plaintiff would not be entitled to punitive damages for a breach of contract claim. *See Oestreicher v. Am. Nat. Stores, Inc.*, 290 N.C. 118, 225, 225 S.E.2d 797, 809 (N.C.1976) (punitive damages only appropriate in breach of contract actions that "smack of tort because of the fraud and deceit involved.") Under the Wage and Hour Act, Plaintiff may be entitled to recover twice the amount of actual wages owed. *See* N.C. Gen. Stat. §95-25.22. Plaintiff may also be entitled to punitive damages if able to demonstrate wrongful discharge in violation of public policy. *See Roberts v. First Citizens Bank & Trust Co.*, 124 N.C.App. 713, 715, 478 S.E.2d 809,810 (1996).

5

given the language of the Complaint. Because Plaintiff's Complaint contemplates a potential recovery that could exceed $75,000.00, subject matter jurisdiction exists.

Plaintiff's Amended Complaint stipulates that Plaintiff will not seek to recover punitive damages or lost benefits, or any amount greater than $75,000.00.[7] Plaintiff's stipulation within the Amended Complaint is not determinative either. *See St. Paul Mercury Indem. Co.,* 303 U.S. at 290-293 (plaintiff could not avoid federal subject matter jurisdiction by decreasing amount in controversy in amended complaint filed post-removal); *Keith v. Clarke Am. Checks, Inc.*, 261 F.Supp.2d 419, 422 (W.D.N.C. 2003) (subsequent representation that plaintiff would not seek more than $75,000.00 did not destroy subject matter jurisdiction). Therefore, the Court finds that the amount in controversy requirement is met and diversity jurisdiction proper. Plaintiff's action will be retained in this federal district court.

### III. Motion To Dismiss Plaintiff's First and Second Causes of Action

#### A. Standard of Review

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must take the allegations in the complaint as true, and construe the facts alleged in the complaint in the light most favorable to the plaintiff. *See GE Investment Private Placement v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001); *Vance v. Bordenkircher*, 533 F.Supp. 429, 432 n.4 (N.D.W.Va.1982) ("[C]ourts have been careful to distinguish between material factual allegations which must be taken as true on a motion to dismiss, and legal conclusions which are not supported by the complaint's factual allegations. Courts need only assume the veracity of the former.") Dismissal may occur only if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle the plaintiff to relief.

---

[7] The primary objective of Plaintiff's Amended Complaint, it seems, is to avoid federal subject matter jurisdiction.

6

*Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997); *Cameron v. Merisel*, 163 N.C. App. 224, 227, 593 S.E.2d 416 (2004) (Rule 12(b)(6) dismissal proper if an "'insurmountable bar' to recovery" appears on the face of the complaint). To survive a Rule 12(b)(6) motion, "a complaint need only outline a recognized legal or equitable claim which sufficiently pinpoints the time, place, and circumstances of the alleged occurrence and which, if proven, will justify some form of relief." *Jackson v. Blue Dolphin Commc'ns of N.C., LLC,* 226 F. Supp. 2d 785, 789 (W.D.N.C. 2002).

**B. Discussion**

In moving to dismiss Plaintiff's first and second causes of action, Defendant seeks to narrow the legal issues presented to a single breach of contract claim. The Court briefly discusses the elements of each challenged claim and the facts alleged in connection therewith.

**1. Wrongful Discharge In Violation Of Public Policy**

"Ordinarily, an employee without a definite term of employment is an employee-at-will and may be discharged for any reason." *Coman v. Thomas Manuf'g Co.*, 325 N.C. 172, 175, 381 S.E.2d 445 (1989). However, the North Carolina Supreme Court recognizes an exception to the general employee-at-will rule where discharge of an employee contravenes North Carolina public policy. *See Coman*, 325 N.C. at 175; *Harrison v. Edison Brothers Apparel Stores, Inc.*, 924 F.2d 530, 532 (4th Cir.1991). The rationale of the North Carolina Court of Appeals, which was expressly adopted by the North Carolina Supreme Court in Coman, is as follows:

> [W]hile there may be a right to terminate a contract at will for no reason, or for an arbitrary or irrational reason, there can be no right to terminate such a contract for an unlawful reason or purpose that contravenes public policy. A different interpretation would encourage and sanction lawlessness, which law by its very nature is designed to discourage and prevent.

*Id.* at 175 (quoting *Sides v. Duke University*, 74 N.C. App. 331, 342, 328 S.E.2d 818 (1985)). Although the Sides language is broad, the exception has been construed narrowly. *See Williams v.*

7

*Hillhaven Corp.*, 91 N.C. App. 35, 39, 370 S.E.2d 423 (1988) (public policy exception to the employment-at-will doctrine is a "narrow exception").

Public policy has been defined as "the principle of law which holds that no citizen can lawfully do that which has tendency to be injurious to the public or against the public good." *Coman,* 325 N.C. at 175 n.2; *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 352, 416 S.E.2d 166 (1992) (declining to attempt to formulate a more precise and exact definition of "public policy"). In *Amos v. Oakdale Knitting*, the court held that "at the very least, public policy is violated when an employee is fired in contravention of express policy declarations contained in the North Carolina General Statutes." *Amos*, 331 N.C. at 353. "Wrongful discharge claims have been recognized in North Carolina where the employee was discharged (1) for refusing to violate the law at the employer's request, . . . (2) for engaging in a legally protected activity, or (3) based on some activity by the employer contrary to law or public policy[.]" *Whitings v. Wolfson Casing Corp.*, 173 N.C.App. 218, 221, 618 S.E.2d 750 (2005) (analyzing legally protected activity theory in worker's compensation context) (internal citations omitted). As pled by Plaintiff, the instant case asserts a cause of action under either a "legally protected activity" theory or "activity by the employer contrary to law or public policy."[8]

While no North Carolina court has expressly identified the essential elements (at least in list form) for such a cause of action, the elements of a claim alleging wrongful discharge in violation of public policy, generally, are described as: (1) the plaintiff was an at-will employee of the defendant; (2) the defendant terminated the plaintiff; (3) there was a public policy applicable to the circumstances of the termination; (4) the plaintiff was protected by this public policy; and (5) the defendant's motivation in terminating the plaintiff violated this public policy. *See generally,* Kaye, Richard E.,

---

[8] There is no allegation that Defendant asked Plaintiff to violate the law in any way, or that any such request had anything to do with Plaintiff's discharge.

8

J.D., *Cause of Action for Termination of At-Will Employee in Violation of Public Policy*, 24 Causes of Action 2d 227 §11 (2007); *Harrison,* 924 F.2d at 533-534 (questioning the contours of North Carolina's "bad faith" [wrongful discharge in violation of public policy] exception and noting that, "[u]ntil the state courts have an opportunity to apply *Coman* to a variety of cases, accurate prediction [of what constitutes a cognizable action] by the federal courts will be difficult."). Under these facts, only the last three elements warrant discussion.[9]

The Court first considers whether Plaintiff identifies the existence of a public policy applicable to the circumstances of the termination. As noted, Plaintiff alleges that he was discharged wrongfully in retaliation for reporting workplace hazards to his supervisors on a number of occasions.[10] Thus, Plaintiff identifies the state policy at issue as the Occupational Safety and Health Act of North Carolina ("OSHANC"), N.C. Gen. Stat. §95-126, *et seq.*, which "requires that every employee be provided a work environment which is free from recognized hazards that cause or are likely to cause death or serious injury or serious physical harm to employees." (Compl. ¶18) Because OSHANC, a state statute, expressly declares that the work environment should be safe (*i.e.*, "free from recognized hazards that cause or are likely to cause death or serious injury or serious physical harm

---

[9] The Court presumes Plaintiff was an employee-at-will for purposes of the Rule 12(b)(6) analysis despite the fact that Plaintiff alleges a breach of contract claim in his Third Claim for Relief. *See Still v. Lance*, 279 N.C. 254, 259, 182 S.E.2d 403 (1971). Should Plaintiff ultimately demonstrate he was not an employee-at-will, Plaintiff's wrongful discharge claim would become moot.

[10] More specifically, In this case, Plaintiff allegedly became aware of "a dangerous condition at or near his work station" in 2006. (Compl. ¶4) Plaintiff claims that the "dangerous condition was the proximate cause of a fellow employee of the Plaintiff falling and suffering an injury," that Plaintiff fell and injured himself twice as a direct result of this dangerous condition, that Defendant-Employer was "made aware of this dangerous condition directly by the Plaintiff on numerous occasions," that a third employee fell and was injured as a direct result of the dangerous condition," and that "the dangerous condition was still in existence when Plaintiff was terminated." (Compl.¶¶ 4-9) Plaintiff's pleading does not allege that the "injuries" sustained by him personally and the other employees were "likely to cause death or serious injury or serious physical harm."

9

to employees"), Plaintiff identifies an appropriate source for, and the existence of, a public policy.[11]

The Court next considers whether Plaintiff potentially falls within the protection of North Carolina's version of OSHA. According to Plaintiff, in reporting what he observed, he was "acting under his statutory duty to comply with occupational safety and health standards and his duty to public safety" and "exercising his statutory right to report a violation of the OSHANC." (Compl. ¶¶21, 22) Defendant contends Plaintiff had no such duty or right, implying that Plaintiff's alleged "legally protected activity" does not fall within OSHANC protection.

Like its federal model, the purpose of OSHANC is "to assure safe and healthful working conditions for workers." *Brooks v. Stroh Brewery Co.*, 95 N.C.App. 226, 229, 382 S.E.2d 874, 877 (N.C.App. 1989); N.C. GEN. STAT. §95-126(b)(2). Consequently, OSHANC makes certain rights available to employees. *See* N.C. GEN. STAT. §95-130. According to OSHANC, the rights and duties of employees shall include but are not limited to the following provisions:

> "Subject to regulations issued pursuant to this Article **any employee** or authorized representative of employers **will be given the right to request an inspection** and to consult with the Commissioner, Director or their agents, at the time of the physical inspection of any work place as provided by the inspection provision of this Article."

*See* N.C. GEN. STAT. §95-130(7). Thus, employees are, in fact, entitled under the statute to request an OSHA inspection and / or participate in any actual, physical workplace inspection.

---

[11] Plaintiff does not allege a violation of North Carolina's Retaliatory Employment Discrimination Act ("REDA"), N.C. Gen. Stat. §95-241, *et seq*. Nor does Plaintiff allege that REDA is one of the specific public policies violated here. REDA prohibits discharge of an otherwise terminable-at-will employee in retaliation for various protected activities, such as, *inter alia*, instituting an OSHA proceeding. *See* N.C. GEN. STAT. §95-241(a)(3) (retaliation against employee prohibited for exercise of any right on behalf of the employee or any other employee afforded by Article 16 [OSHANC] of Chapter 95 of the General Statues). REDA has been described by the North Carolina Court of Appeals as "a supplemental remedy to the common law claim of wrongful discharge." *Whitings*, 173 N.C.App. at 222 (internal citations omitted).

However, "North Carolina has never recognized a cause of action for wrongful discharge in favor of employees who orally complained to their employers about unsafe working conditions . . . ." *Cromer v. Perdue Farms, Inc.*, 900 F.Supp. 795, 801 n. 6 (M.D.N.C. September 26, 1994), aff'd, 65 F.3d 166 (4th Cir.1995) (granting summary judgment in favor of defendant on wrongful discharge action alleging violation of North Carolina public policy). In *Cromer*, the trial court explained that Section 95-241 (REDA) offered no protection because, "Plaintiff admits that she did not initiate a complaint with the Occupational Safety and Health Review Commission or threaten to initiate any such complaint." Id.

Here, Plaintiff Crespo does not allege that he took any action beyond direct communication with his supervisor regarding the purported hazard. It is also unclear from the record whether Plaintiff's alleged complaints were oral or written. In other words, the Court cannot glean from the pleadings whether Plaintiff's complaints were ever shared with any external source. Similarly, Plaintiff does not expressly allege that he threatened to file a complaint under OSHANC or otherwise request an inspection. However, Plaintiff's pleading does not preclude the possibility that a threat to take more formal action was a part of Crespo's "reporting" to his employer. Indeed, Plaintiff alleges that Defendant's decision to terminate him was motivated by a desire "to prevent [Plaintiff] from exercising his statutory rights and duties as provided by public policy . . . ." (Compl. ¶23) Because these questions can easily be resolved at summary judgment, the Court will not dismiss Plaintiff's wrongful discharge cause of action at this time.[12]

---

[12] If all Plaintiff did was merely report his concerns to his supervisors, Plaintiff will have to distinguish this case somehow from the *Whitings* and *Cromer* cases in order to survive summary judgment. *See Whitings*, 173 N.C.App. at 222-223 (plaintiff's wrongful discharge cause of action was properly dismissed for failure to allege legally protected activity; holding that the exercise of rights under the Workers' Compensation Act required the filing of an actual claim seeking workers' compensation benefits as opposed to requesting payment of medical expenses by employer).

11

Finally, in terms of Defendant's motivation for terminating Plaintiff, Plaintiff expressly alleges he was terminated *in retaliation* for reporting the dangerous condition. (Compl. ¶25) ("Defendant terminated the Plaintiff in retaliation for, and only twenty (20) days after Plaintiff's [sic] reporting to his supervisors the dangerous condition and the resulting injuries the condition caused.") Plaintiff further suggests that the timing of his dismissal is suspect. (Id.) Accepting the facts as alleged in Plaintiff's complaint as true, Plaintiff satisfies the third criteria.

For these reasons, Plaintiff's wrongful discharge claim alleging violation of North Carolina public policy survives Rule 12(b)(6) scrutiny.

### 2. Violation Of The Wage And Hour Act, N.C. Gen. Stat. §95-25.1, *et seq.*

Pursuant to N.C. Gen. Stat. §95-25.22, any employer who violates one or more provisions of North Carolina's Wage and Hour Act "shall be liable to the employee or employees affected . . . ." N.C. Gen. Stat. §95-25.22(a)). The Wage and Hour Act provides that:

> **Employees whose employment is discontinued for any reason shall be paid all wages due** on or before the next regular payday either through the regular pay channels or by mail if requested by the employee. Wages based on bonuses, commissions or other forms of calculation shall be paid on the first regular payday after the amount becomes calculable when a separation occurs. **Such wages may not be forfeited unless the employee has been notified in accordance with G.S. 95-25.13 of the employer's policy or practice which results in forfeiture. Employees not so notified are not subject to such loss or forfeiture**.

N.C. Gen. Stat. §§95-25.7 and 95-25.2 (definitions). Thus, it is true that the Wage and Hour Act generally requires notice to the employee before wages may be forfeited. *Id.*

It is also true that the North Carolina Wage and Hour Act ("NCWHA") is designed in part "to ensure that workers are duly compensated for the hours that they have worked." *Whitley v. Horton*, 168 N.C. App. 597, 608 S.E.2d 416, 2005 WL 351143, **4-5 (February 15, 2005). As explained by the North Carolina Court of Appeals,

[G]iving the statutory language its natural and ordinary meaning, the Wage and Hour

Act requires an employer . . . to pay those wages and benefits due when the employee
has actually performed the work required to earn them.

*Whitley*, 2005 WL 351143, *5 (quoting *Narron v. Hardee's Food Syss., Inc.*, 75 N.C.App. 579, 583, 331 S.E.2d 205 (1985)); *See also Swanson v. Chem-Nuclear Syss., Inc.*, 1997 WL 33621597, *3 (E.D.N.C.) ("[A] logical predicate of recovery under NCWHA is that the discharged employee must first have actually earned the wages before he/she is entitled to compensation for them.") (citing *Hamilton v. Memorex Telex Corp.*, 118 N.C.App. 1, 454 S.E.2d 278 (1995)).

For purposes of the NCWHA, wages are defined as "compensation **for labor or services rendered** by an employee." N.C. Gen. Stat. §95-25.2(16) (emphasis added). The term "wage" may also include "sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." *Id.*

Plaintiff alleges in his original Complaint that he was operating his machine when a needle broke off at the beginning of a fabric roll. (Compl. ¶10) According to Plaintiff, he reported the problem to a mechanic who placed a repair "ticket" on the machine. (Compl. ¶11) After this event, Plaintiff alleges he "was told that he could not work at his job for eight (8) days" and that he was not paid during that time period. (Compl. ¶¶12, 13) Plaintiff claims he "was not given any notice or due process prior to the Defendant withholding wages, nor did he give any written authorization for the wages for these eight days to be withheld from him." (Compl. ¶¶13-14)

Viewing the facts as alleged in the light most favorable to Plaintiff, Defendant did not withhold, forfeit, or divert Plaintiff's "wages" as that term is defined within the NCWHA. According to Plaintiff, he was not paid for the eight-day period beginning the day Plaintiff was sent home and ending August 22, 2006 – the day he was formally terminated. Plaintiff does not allege that Defendant failed to pay him for any actual labor or services rendered within the Second Claim

13

For Relief.[13] Despite Plaintiff's argument regarding lack of notice, Plaintiff's Complaint only seeks recovery under the NCWHA for a period of time in which he was admittedly <u>not</u> working. Plaintiff's allegations are insufficient and, therefore, subject to dismissal pursuant to Rule 12(b)(6).

### III. Order

**IT IS, THEREFORE, ORDERED THAT:**

1) Plaintiff's Motion To Remand is **DENIED;**

2) Defendant's Motion To Strike Plaintiff's Amended Complaint is **GRANTED;**

3) Defendant's Motion To Dismiss Plaintiff's First Cause of Action [alleged within Plaintiff's original Complaint] is **DENIED**;

4) Defendant's Motion To Dismiss Plaintiff's Second Cause of Action [alleged within Plaintiff's original Complaint] is **GRANTED** but **DISMISSED without prejudice**; and

5) Defendant's Alternative Motion To Dismiss Plaintiff's First and Second Causes of Action within Plaintiff's Proposed Amended Complaint is **DENIED as moot**.

Signed: July 31, 2008

Richard L. Voorhees
United States District Judge

---

[13] Without setting forth any factual basis for the relief sought, Plaintiff alleges within his Third Claim for Relief, "The Defendant has breached its contract with the Plaintiff by, among other things, failing to provide adequate due process, notice, warnings, and other procedures prior to terminating the employee as well as **failure to provide proper wages to the employee for hours worked**." (Compl. ¶38)(emphasis added).